IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 8:07CR137 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM |
| | ) | AND ORDER |
| ALVARO ARCINIEGA, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the Defendant's Statement of Appeal (Filing No. 46) of the Report and Recommendation prepared by Magistrate Judge F.A. Gossett. Judge Gossett has recommended that the Defendant's Motion to Suppress be denied in its entirety.

The Defendant, Alvaro Arciniega, is charged with knowingly possessing with the intent to distribute a mixture or substance containing cocaine. Arciniega seeks an order suppressing evidence obtained as a result of a February 27, 2007, search of a Dodge Durango, his business, and his residence. Following an evidentiary hearing, Judge Gossett issued a Report and Recommendation (Filing No. 45) in which he concluded: there was probable cause to stop Arciniega's vehicle based on a traffic violation and based on probable cause that a felony was being committed; that the deployment of a specially trained drug dog was permissible, that there was probable cause to search the vehicle based on the dog's alert; and that Arciniega gave valid verbal and written consent to search the business and his residence.

Arciniega has filed a Statement of Appeal and a brief in support of his arguments on appeal. (Filing Nos. 46 and 47). The Defendant argues that Judge Gossett wrongly concluded that 1) the stop was constitutional, 2) Arciniega consented to the searches, and

3) he was properly advised of his *Miranda* rights. Based on these arguments, the Defendant asserts that the evidence obtained by law enforcement officials on February 27, 2007, constitutes "fruit of the poisonous tree" and should be suppressed.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(C) and NECrimR 57.3, the Court shall make a de novo determination of those portions of the report, findings, and recommendations to which the Defendant has objected. The Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations. The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions.

## FACTUAL BACKGROUND

The Magistrate Judge provided a detailed account of the events relevant to the stop, canine deployment, arrest, consent, rights advisory and searches that occurred on February 27, 2007. The Court has considered the transcript of the evidentiary hearing. (Filing Nos. 20 and 44). The Court also carefully viewed the evidence. Based on the Court's de novo review of the evidence and arguments, the Court adopts Judge Gossett's factual findings in their entirety.

## ANALYSIS

**The Stop**

The evidence supports Judge Gossett's conclusion that the officers acted lawfully when they stopped Arciniega's vehicle. According to Officer Bossman, whose credibility Judge Gossett credited, the stop was based on a violation of a Nebraska traffic statute, Neb. Rev. Stat. § 60-6256, and upon probable cause that a sale of illegal narcotics was

in progress.  Officer Bossman testified that as he followed the Defendant, who was driving a Dodge Durango, he saw an air freshener hanging from the Durango's rear view mirror. Office Bossman also knew, based on the investigation conducted by other narcotics officers whom he had been called to assist, that Arciniega was the driver of the Durango, that he had been under surveillance based on information from a confidential informant, that he was suspected of selling controlled substances, and that the Durango was traveling in the direction of a prearranged drug sale.

> Nebraska law provides:
>
> It shall be unlawful for any person to operate a motor vehicle with any object placed or hung in or upon such vehicle, except required or permitted equipment of the vehicle, in such manner as to obstruct or interfere with the view of the operator through the windshield or to prevent the operator from having a clear and full view of the road and condition of traffic behind such vehicle.  Any sticker or identification authorized or required by the federal government or any agency thereof or the State of Nebraska or any political subdivision thereof may be placed upon the windshield without violating the provisions of this section.  Any person violating the provisions of this section shall be guilty of a Class V misdemeanor.

Neb. Rev. Stat. § 60-6,256.  The Eighth Circuit Court has "repeatedly held that 'any traffic violation, – regardless of its perceived severity, provides an officer with probable cause to stop the driver.'"  The officer must objectively have "a reasonable basis for believing that the driver has breached a traffic law.  *United States v. Thomas*, 93 F.3d 479, 485 (8th Cir. 1996).  The Court concludes that Officer Bossman had a reasonable basis for believing that the Arciniega had breached Section 60-6,256, as judged against an objective standard, when he observed the air freshener hanging from the Durango's rear view mirror.

Arciniega argues that Section 60-6,256 is unconstitutional on its face and as it was enforced against him, and for that reason, the stop is invalid.  Arciniega argues that the

3

statute is unconstitutional on its face because it carves out an exception for government-issued stickers or identification.  For example, the Defendant argues that the air freshener that he had hanging from his mirror is smaller and less obstructive than a government-issued handicapped parking hanger that falls within the exception. The Court finds that the exception does not render the statute unconstitutional on its face. The legitimate state interest supporting the statute is to promote safe driving.  The Court concludes that having a view, unobstructed by objects hanging from the rear view mirror, is rationally related to the legitimate state interest.  The exception does not nullify the state's interest or render the statute unconstitutional.

Arciniega also argues that Section 60-6,256 is unconstitutional as it was enforced. The Defendant characterizes the enforcement of Section 60-6,256 as arbitrary and capricious, and asserts that the statute exists only to serve as a pretext for conducting warrantless searches of vehicles.  Officer Bossman testified that he has written "hundreds" of tickets for violations of this statute, but that he does not always stop drivers who have air fresheners hanging from the rear view mirror.  Based on that testimony, Arciniega contends that the manner in which Section 60-6,256 is enforced is in violation of the Equal Protection and Due Process clauses of the U.S. Constitution.

"When the claim is selective enforcement of the traffic laws or a racially-motivated arrest, the plaintiff must normally prove that similarly situated individuals were not stopped or arrested in order to show the requisite discriminatory effect and purpose." *Johnson v. Crooks*, 326 F.3d 995, 1000 (8th Cir. 2003).  To support an equal protection claim, a plaintiff must show that the selective enforcement is based on some "unconstitutional consideration."  *United States v. Pipes*, 125 F.3d 638, 640 (8th Cir. 1997).  There is no

evidence regarding the basis for Officer Bossman's admittedly selective enforcement of the statute, and specifically, there is no evidence that Officer Bossman was motivated by an unconstitutional consideration. For these reasons, I agree with Judge Gossett that Arciniega has failed to present evidence sufficient to show an equal protection violation of any kind.

Similarly, the only evidence Arciniega offers in support of the Due Process challenge is Officer Bossman's testimony that he does not stop all vehicles that he observes in violation of Section 60-6,256. This evidence neither shocks the conscience nor does it violate a "fundamental right deeply rooted in Nation's history and tradition and implicit in concept of ordered liberty," at least one of which is required to show a substantive due process violation. *Moran v. Clarke,* 296 F.3d 638, 651 (8th Cir. 2002) (en banc) (Bye, J., concurring). *See also Poole v. Flanery*,162 Fed.Appx. 661, 662 (8th Cir. 2006). For these reasons, the Court concludes that the Defendant's constitutional challenges to Neb. Rev. Stat. § 60-6,256 must fail, and that the stop was lawful.

**The Consent**

With regard to the validity of the Defendant's consent to search, the Defendant argues that the Magistrate Judge failed to give sufficient weight, under the totality-of-the-circumstances standard, to the fact that he speaks little English and has less than a high school education. *See United States v. Chaidez*, 906 F.2d 377, 380 (8th Cir. 1990) (setting forth the totality-of-the-circumstances standard and factors to consider in determining the voluntariness of consent). The Defendant also argues that proper consent to the search could not have been provided by him because he was not advised of his *Miranda* rights

5

before the officers asked for his permission to search the vehicle or the business. Had the Magistrate Judge given these facts due consideration, Arciniega argues, the searches conducted on February 27, 2007, would have been declared invalid and the evidence suppressed. *United States v. Bradley,* 234 F.3d 363, 366 (8th Cir. 2000).

Arciniega argues that, absent a "proper rights advisory . . . in a language the Defendant understands," "even questions seeking to obtain a suspect's consent to search . . . are an impermissible violation of the Defendant's Fifth Amendment rights." (Filing No. 47, p. 3). Arciniega relies on two relatively recent Eighth Circuit Court opinions to show that a suspect must be informed of his or her *Miranda* rights before officers even ask for consent to search, or the search will be considered unlawful, citing *United States v. Escobar,* 389 F.3d 781 (8th Cir. 2004) and *United States v. Fleck,* 413 F.3d 883 (8th Cir. 2005). The Court concludes that neither *Escobar* nor *Fleck* stands for such a proposition, and that this case does not present the kind of facts that required suppression in those cases.

In both *Escobar* and *Fleck,* the Eighth Circuit Court considered whether the defendants had given consent to search freely and voluntarily by analyzing the several factors that bear on the issue, as set forth in *United States v. Chaidez*, 906 F2d 377, 381 (8th Cir. 1990). In *Escobar*, the Eighth Circuit Court acknowledged that "while Miranda warnings 'are not required for consent to search to be voluntary . . . they can lessen the probability that a defendant was subtly coerced.'" 389 F.3d at 786, quoting *United States v. Lee,* 356 F3d 831, 834 (8th Cir. 2003). In *Escobar*, the Court suppressed the evidence finding that police officers had conveyed the message to the defendant that her compliance

6

with their request to search was required by 1) misrepresenting to her that a drug-sniffing dog had alerted to her bag when no dog had been deployed; 2) conducting the search in a private area; and 3) initially telling the defendant that she was not in trouble and they just wanted to talk to her, and then not advising her of her right to refuse consent to search her luggage. *Id.* 786.

The Eighth Circuit Court did not suppress evidence in *Fleck*, finding that a properly authorized person had voluntarily consented to the search of defendant's house. During the search, the police asked for a key to a locked bedroom where evidence was later found. The defendant sought to suppress the evidence found in the bedroom because the defendant had not received a *Miranda* warning prior to the request for the key, which defendant argued was a custodial interrogation. The Eighth Circuit Court rejected that argument, finding that the key was provided voluntarily, and noting that the Court has held that "the exclusionary rule as applied under the Fifth Amendment does not require the suppression of physical evidence derived from a voluntary, non-*Mirandized* statement." *Fleck*, 413 F.3d at 893 quoting *United States v. Villalba-Alvarado,* 345 F.3d 1007, 1013 (8th Cir. 2003).

In this case, the police officers made no misrepresentations to Arciniega, and Arciniega's only pre-*Mirandized* statements related to his consent. Officer Bossman and Officer Kula testified that they spoke to Arciniega in English, and that they believed that Arciniega understood what they had said. Officer Bossman conducted a dog-sniff of the vehicle, and the dog alerted to the presence of illegal drugs.[1] Meanwhile, Officer Kula

---

[1] The Eighth Circuit Court's cases make clear that "a positive alert by a drug dog constitutes probable cause." *United States v. Gomez,* 312 F.3d 920, 925-26 (8th Cir. 2002).

7

asked Arciniega in English for permission to search the Durango, and the Defendant responded "yes." (Tr. 46:15-24). Officer Kula also obtained a consent-to-search form in the Spanish language. After confirming that Arciniega spoke Spanish, Officer Kula completed the form; provided it to the Defendant; asked the Defendant to read it; and, if he understood and agreed, requested that he sign it. Kula testified that he watched the Defendant read the form and sign it. (Tr. 49:2-51:8). After the form was signed, Arciniega stood by on a public street and watched, without objection or protest, while the Durango was searched by officers. When the drugs were located in the vehicle, Arciniega was placed in custody and transported to his place of business, where he was provided with a second Spanish-language consent form to search his business, which Arciniega appeared to read, and then signed. This consent form was later reviewed with him by a Spanish-speaking officer who also read him his *Miranda* rights in Spanish. I expressly reject as conjecture the Defendant's argument that, by involving a Spanish-speaking officer at the business who confirmed Arciniega's consent and provided the *Miranda* advisory in Spanish, there is some concession that the earlier consents to search were faulty.

Even though the Defendant was not advised of his *Miranda* rights before the search was conducted, given the totality of the circumstances, the Court concludes that the consent to search the vehicle and the business was voluntarily and knowingly given. The fact that the communication between Officers Bossman and Kula and Arciniega took place in English, rather than in Spanish, Arciniega's primary language, "does not suggest a finding of involuntariness" where Arciniega gave every indication that he understood what was happening. *See United States v. Flores*, 474 F.3d 1100, 1104 (8th Cir. 2007). I agree

8

with Judge Gossett's finding that Arciniega understood what was happening and voluntarily gave his consent to search both the vehicle and the business.

## CONCLUSION

For all these reasons, I agree with Judge Gossett's Report and Recommendation and adopt it in its entirety. The motion to suppress is denied.

IT IS ORDERED:

1. The Magistrate Judge's Report and Recommendation (Filing No. 45) is adopted in its entirety;

b. The Statement of Appeal of the Magistrate Judge's Recommendation (Filing No. 46) is denied; and

3. The Defendant's Motion to Suppress (Filing No. 12) is denied.

DATED this 28th day of December, 2007.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge